## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| WANDA I. FIGUEROA CRESPO, | |
| Plaintiff, | |
| v. | CIVIL NO.: 19-1269 (MEL) |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

### OPINION AND ORDER

Pending before the court is Ms. Wanda I. Figueroa Crespo's ("Plaintiff") appeal from the decision of the Commissioner of Social Security ("the Commissioner") denying her application for disability benefits under the Social Security Act. ECF No. 15. Plaintiff alleges that the administrative law judge's residual functional capacity determination is not supported by substantial evidence. It is also claimed by Plaintiff that the administrative law judge erred at step four of the sequential process by finding that she was able to perform her past work.

### I.   Procedural and Factual Background

On August 5, 2014, Plaintiff filed an application for Social Security benefits alleging that on January 1, 2013 ("the onset date"), she became unable to work due to disability. Tr. 21.[1] Prior to the onset date, Plaintiff worked as a general office clerk and as a secretary. Tr. 31. Plaintiff met the insured status requirements of the Social Security Act through September 30, 2016. Tr. 23. Plaintiff's disability claim was initially denied on October 14, 2014, and upon reconsideration. Tr. 21. Thereafter, Plaintiff requested a hearing which was held on May 15, 2017 before Administrative Law Judge Kimberly O. Wyatt ("the ALJ"). Tr. 37-63. On June 29,

---

[1] "Tr." refers to the transcript of the record of proceedings.

2017, the ALJ issued a written decision finding that Plaintiff was not disabled. Tr. 31. Thereafter, Plaintiff requested review of the ALJ's decision. The Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner, subject to judicial review. Tr. 1-3. Plaintiff filed a complaint on March 25, 2019. ECF No. 1. Both parties have filed supporting memoranda. ECF Nos. 15, 20.

II.     **Legal Standard**

   **A. Standard of Review**

Once the Commissioner has rendered a final determination on an application for disability benefits, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing [that decision], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The court's review is limited to determining whether the ALJ employed the proper legal standards and whether his factual findings were founded upon sufficient evidence. Specifically, the court "must examine the record and uphold a final decision of the Commissioner denying benefits, unless the decision is based on a faulty legal thesis or factual error." López-Vargas v. Comm'r of Soc. Sec., 518 F. Supp. 2d 333, 335 (D.P.R. 2007) (citing Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 16 (1st Cir. 1996) (per curiam)).

Additionally, "[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). The standard requires "'more than a mere scintilla of evidence but may be somewhat less than a preponderance' of the evidence." Ginsburg

v. Richardson, 436 F.2d 1146, 1148 (3d Cir. 1971) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

While the Commissioner's findings of fact are conclusive when they are supported by substantial evidence, they are "not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam) (citing Da Rosa v. Sec'y of Health & Human Servs., 803 F.2d 24, 26 (1st Cir. 1986) (per curiam); Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam)). Moreover, a determination of substantiality must be made based on the record as a whole. See Ortiz, 955 F.2d at 769 (citing Rodríguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)). However, "[i]t is the responsibility of the [ALJ] to determine issues of credibility and to draw inferences from the record evidence." Id. Therefore, the court "must affirm the [Commissioner's] resolution, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." Rodríguez Pagán v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987) (per curiam).

**B. Disability under the Social Security Act**

To establish entitlement to disability benefits, a plaintiff bears the burden of proving that he is disabled within the meaning of the Social Security Act. See Bowen v. Yuckert, 482 U.S. 137, 146 n.5, 146–47 (1987). An individual is deemed to be disabled under the Social Security Act if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

Claims for disability benefits are evaluated according to a five-step sequential process. 20 C.F.R. § 404.1520; Barnhart v. Thomas, 540 U.S. 20, 24–25 (2003); Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 804 (1999); Yuckert, 482 U.S. at 140–42. If it is determined that plaintiff is not disabled at any step in the evaluation process, then the analysis will not proceed to the next step. 20 C.F.R. § 404.1520(a)(4). At step one, it is determined whether plaintiff is working and thus engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If he is, then disability benefits are denied. 20 C.F.R. § 404.1520(b). Step two requires the ALJ to determine whether plaintiff has "a severe medically determinable physical or mental impairment" or severe combination of impairments. 20 C.F.R. § 404.1520(a)(4)(ii). If he does, then the ALJ determines at step three whether plaintiff's impairment or impairments are equivalent to one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). If so, then plaintiff is conclusively found to be disabled. 20 C.F.R. § 404.1520(d). If not, then the ALJ at step four assesses whether plaintiff's impairment or impairments prevent him from doing the type of work he has done in the past. 20 C.F.R. § 404.1520(a)(4)(iv).

In assessing an individual's impairments, the ALJ considers all of the relevant evidence in the case record to determine the most the individual can do in a work setting despite the limitations imposed by his mental and physical impairments. 20 C.F.R. § 404.1545(a)(1). This finding is known as the individual's residual functional capacity ("RFC"). Id. If the ALJ concludes that plaintiff's impairment or impairments do prevent him from performing his past relevant work, the analysis proceeds to step five. At this final step, the ALJ evaluates whether plaintiff's RFC, combined with his age, education, and work experience, allows him to perform any other work that is available in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). If the

ALJ determines that there is work in the national economy that plaintiff can perform, then disability benefits are denied. 20 C.F.R. § 404.1520(g).

### C. The ALJ's Decision

In the case at hand, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through September 30, 2016. Tr. 23. Then, at step one of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the relevant period. Id. At step two, the inquiry as to severe impairments resulted in the ALJ determining that Plaintiff had the following severe impairments: "degenerative disc disease and osteoarthritis of the lumbar spine, bilateral carpal tunnel syndrome, thyroid disorder, depressive and anxiety disorders." Id. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 23-24. Next, the ALJ determined that during the relevant period

> [Plaintiff] had the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) except that she can stoop, kneel, crouch, crawl, and climb ramps and stairs frequently; but, never climb ropes, ladders or scaffolds. The claimant can handle and finger, bilaterally, frequently. She can understand, remember, and carry out simple instructions and perform simple tasks. Within this context, she can maintain attention for 2-hour segments throughout an 8-hour workday; communicate and interact frequently with the public, supervisors, and coworkers; complete assigned tasks with ordinary supervision; exercise sufficient judgment to make simple work-related decisions; adapt to changes in a simple and routine work setting; and adhere to a normal schedule.

Tr. 26. At step four, the ALJ determined that through the date last insured, Plaintiff could perform her past relevant work as a general office clerk as "actually and generally performed." Tr. 31. Thus, the ALJ concluded that Plaintiff was not disabled. Id.

5

**III.     Legal Analysis**

Plaintiff objects to the ALJ's final decision denying her disability benefits on two grounds. First, Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence. ECF No. 15, at 4-5. It is also alleged by Plaintiff that the ALJ erred in finding that she was able to perform her past work as a general office clerk. Id. at 5.

**A. The ALJ's RFC Determination**

Plaintiff claims that the ALJ did not properly consider the medical opinions of record regarding her mental impairments in the RFC determination. Id. at 4-5. The ALJ is responsible for formulating a claimant's RFC. See 20 C.F.R. § 404.1546(c). "In making an RFC assessment, the ALJ must consider all relevant evidence in the record, including the opinions and statements by all medical sources." Sánchez-Velázquez v. Comm'r of Soc. Sec., Civ. No. 14-1723, 2016 WL 917913, at *3 (D.P.R. Mar. 10, 2016) (citations omitted); see 20 C.F.R. § 404.1545(a)(3).

Regarding her mental limitations, Plaintiff alleges that the ALJ failed to "mention or discuss" the medical findings of examining psychologist Dr. Jomaira E. Ross Casiano ("Dr. Ross") and did not consider her clinical impression that Plaintiff's "prognosis is poor." ECF No. 15, at 4; Tr. 29, 589-94. Plaintiff's claim is meritless. First, while the ALJ must consider all relevant evidence in the record, "the ALJ [is] not required to recite every piece of evidence which favored [the claimant]." Santiago v. Sec'y. of Health & Human Servs., Civ. No. 94-1891, 1995 WL 30568, at *4 (1st Cir. Jan. 25, 1995). In the case at hand, the ALJ specifically considered and discussed Dr. Ross' psychological report in the RFC determination. Tr. 29, 589-94. In September 2014, Plaintiff was diagnosed by Dr. Ross with "[m]ood disorder due to known physiological condition: fibromyalgia, thyroid, [carpal tunnel], herniated discs, constant pain in hands, back and neck." Tr. 29, 594. It was noted by the ALJ that Dr. Ross described Plaintiff as

6

cooperative and had a neat and clean appearance, but she also looked depressed and in pain. Tr. 29, 592. Dr. Ross observed Plaintiff with logical and coherent thought process, coherent and logical speech, and full orientation to time, person, and place. Tr. 29, 593-94. Furthermore, Dr. Ross indicated that Plaintiff had adequate remote and recent memory, but impaired immediate and short-term memory. Tr. 29, 593-94. In her decision, the ALJ clarified that Plaintiff only completed half the interview with Dr. Ross, limited by alleged pain, rather than mental limitations. Tr. 29, 592. Thus, the ALJ specifically considered Dr. Ross' psychological report in her RFC determination. Tr. 26, 29, 589-94.

Moreover, the ALJ considered other evidence in the record regarding Plaintiff's mental impairments in determining her RFC. In May 2014, treating psychiatrist Dr. Annette Martínez Díaz ("Dr. Martínez") diagnosed Plaintiff with mood disorder and her treatment notes show that Plaintiff had deteriorated recent memory, poor insight, poor judgment, and diminished concentration. Tr. 28, 234-37. The ALJ, however, noted that subsequent treatment records demonstrated that Plaintiff's mental condition improved over time. Tr. 28, 30-31.

In March 2015, treating general practice specialist Dr. Vanessa Ramírez Zapata ("Dr. Ramírez") observed Plaintiff with appropriate hygiene and attire, appropriate verbal expression, calm attitude, adequate psychomotor behavior, normal mood, appropriate affect, and logical, relevant, and coherent thought process. Tr. 190-192. It was further reported that Plaintiff was fully oriented with intact memory and had adequate insight, average intellect, and good judgment. Tr. 191. In May 2015, treating general practitioner Dr. Janice Ramos Colón ("Dr. Ramos") evaluated Plaintiff and noted that she was appropriately dressed, relaxed, cooperative, happy, fully oriented, and her thought process was organized and logical. Tr. 276. Plaintiff's insight and judgment were deemed adequate and her progress was described as stable.

Id. Dr. Ramos also diagnosed Plaintiff with a Global Assessment of Functioning ("GAF") score of 60. Tr. 29, 276.

The ALJ also considered treatment notes from treating psychiatrist Dr. Miguel H. Creales Cese ("Dr. Creales") who reported that Plaintiff did not have cognitive difficulties in attention, concentration, or memory.[2] Tr. 29-30, 291, 295, 297. Plaintiff was observed with intact thought process, appropriate affect, and her insight, judgment, and reliability were "good." Tr. 291, 295. Dr. Creales also diagnosed Plaintiff with a GAF score of 60. Tr. 29, 291. In determining Plaintiff's RFC, the ALJ assigned partial weight to Plaintiff's GAF scores of 60, "as they are indicative of moderate mental limitations, but do not provide a function assessment of limitations." Tr. 29. Thus, the ALJ properly considered the medical opinions of record, including the observations from Dr. Ross, regarding Plaintiff's mental impairments. Tr. 26-30.

Next, Plaintiff alleges that the ALJ failed to consider medical evidence related to her carpal tunnel syndrome in the RFC determination. ECF No. 15, at 4-5. In her decision, the ALJ noted that while the record contained objective evidence of hand pain and numbness, Plaintiff only received conservative treatment and did not require surgical intervention for her alleged manipulative restrictions. Tr. 30. It was noted by the ALJ that treating physiatrist Dr. Jorge L. Báez Torres ("Dr. Báez") completed a nerve conduction study in September 2012 which revealed bilateral carpal tunnel syndrome. Tr. 27, 620. Subsequent progress notes from Dr. Báez indicated that he recommended 10 sessions of physical therapy. Tr. 604-05. In February 2014, examining radiologist Dr. Oscar Crespo ("Dr. Crespo") found that x-rays of Plaintiff's hands evidenced normal findings. Tr. 27, 123. The ALJ also indicated that she considered treating general practice specialist Dr. Ileana Echevarría Martínez's ("Dr. Echevarría") September 2014

---

[2] These treatment notes correspond to Dr. Creales' treatment of Plaintiff in September 2015, November 2015, and December 2016. Tr. 291, 295, 297.

general medical report that indicated that Plaintiff had only slightly decreased strength (4/5) of the hands bilaterally and found that she had an ability to perform all hand functions, such as gripping, grasping, pinching, buttoning a shirt, picking up a coin, and writing. Tr. 585. Furthermore, treating rheumatologist Dr. Roberto León Pérez's ("Dr. León") progress notes indicated that Plaintiff "had very good pain relief" with the use of her medication and that she had no evidence of inflammation or rheumatoid arthritis.[3] Tr. 561, 599, 743. Therefore, the record reflects that the ALJ properly considered evidence related to Plaintiff's alleged impairments stemming from her carpal tunnel syndrome in determining her RFC.

### B. The ALJ's Step Four Determination

Next, Plaintiff contends that the ALJ erred in her step four determination that Plaintiff could perform her past relevant work as a general office clerk. ECF No. 15, at 4-5. Specifically, Plaintiff alleges that the ALJ's hypothetical to the vocational expert ("VE") was incomplete because it did not include all of the limitations from the RFC determination. Id. At step four of the sequential process, the ALJ assesses whether a claimant's impairment or impairments prevent him from doing the type of work he has done in the past. 20 C.F.R. § 404.1520(a)(4)(iv). "The ALJ may rely on the VE's testimony to find that the claimant is able to perform past work only so long as the VE's testimony is in response to an accurate hypothetical." Ruiz-Feliciano v. Astrue, Civ No. 10-1996, 2012 WL 290089, at *4 (D.P.R. Jan. 31, 2012). "A VE's testimony cannot constitute substantial evidence to support an ALJ's determination as to a claimant's disability status unless it accurately reflects all of the claimant's limitations." Id.

---

[3] These progress notes correspond to Dr. León's treatment of Plaintiff in March 2014 and November 2014.

In the case at bar, the ALJ's RFC determination included a limitation that "[Plaintiff] can handle and finger, bilaterally, frequently."[4] Tr. 26. The ALJ, however, erroneously omitted this limitation from the hypothetical posed to the VE and instead stated, "the hypothetical person can use their hands bilaterally for gross and fine manipulation." Tr. 60. Thus, the ALJ's hypothetical question to the VE was indeed incomplete because it did not accurately reflect all of Plaintiff's limitations in the RFC determination. See Tr. 26, 59-60.

While the hypothetical posed to the VE was incomplete, the ALJ's error was harmless. "If an ALJ errs by posing an incomplete hypothetical question to the vocational expert, the error is harmless if the vocational expert's opinion would have been the same even with the omitted impairment." Lavoie v. Berryhill, Civ. No. 17-49, 2018 WL 922140, at *7 (D.N.H. Feb. 16, 2018) (citing Dorman v. Astrue, No. 12–50023–TSH, 2013 WL 4238315, *6 (D. Mass. May 21, 2013) (explaining that the ALJ's omission of a mental limitation from claimant's RFC was harmless error because the vocational expert's opinion would not have changed even if the RFC had included the limitation); see also Bickford v. Barnhart, 242 F. Supp. 2d 39, 42 (D. Me. 2002) (explaining that the failure by the ALJ to include a relevant limitation in the hypothetical question put to the vocational expert did not require reversal where omission was harmless).

In the case at hand, the VE testified that Plaintiff could perform her past job as a general office clerk in response to the ALJ's incomplete hypothetical. Tr. 60. The VE further testified that the occupation of general office clerk "requires frequent use of the hands for fine and gross manipulation." Tr. 60. The Dictionary of Occupational Titles ("DOT") classifies the general office clerk occupation as light-exertional work. See DOT (4th Ed., Rev.), 1991 WL 671792

---

[4] The term "constantly" is defined as occurring two-thirds or more of the time, "frequently" is defined as anywhere between one-third to two-thirds of the time, and "occasionally" is defined as very little up to one-third of the time. See SSA Program Operations Manual System; Social Security Ruling 83–10, 1983 WL 31251, at *6.

10

(Jan. 1, 2016). According to the DOT, the general office clerk occupation requires frequent handling and fingering. Id. Therefore, the VE's opinion that Plaintiff could perform her past job as a general office clerk would have been the same even if the ALJ had included the proper manipulative impairment in the hypothetical question that Plaintiff "can handle and finger, bilaterally, frequently" because the general office clerk occupation requires frequent handling and fingering. See id.; Tr. 26. Thus, the ALJ's omission constitutes harmless error and the step four determination that Plaintiff could perform her past relevant work as a general office clerk is supported by substantial evidence. See Lavoie, 2018 WL 922140, at *7; Tr. 31.

**IV.    Conclusion**

Based on the foregoing analysis, the court concludes that the decision of the Commissioner that Plaintiff was not entitled to disability benefits was supported by substantial evidence. Therefore, the Commissioner's decision is hereby AFFIRMED.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 26th day of August, 2020.

s/Marcos E. López<br>U.S. Magistrate Judge